Filed 6/4/24  P. v. Barocio CA2/2
(Opinion on transfer from Supreme Court)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B317635 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA482590) |
| v. | |
| MIGUEL BAROCIO, | **OPINION ON REMAND** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted Miguel Barocio (defendant) of first degree murder after he drove to rival gang territory and gunned down a pedestrian walking his bicycle across the street.  On appeal, defendant raises a number of instructional, procedural, and sentencing issues.  In a nonpublished opinion issued on November 3, 2022, we affirmed defendant's convictions but remanded for resentencing.  (*People v. Barocio* (Nov. 3, 2022, B317635).)  Defendant filed a petition for review by the California Supreme Court, which was held along with numerous other similar cases pending the resolution of *People v. Salazar*, S275788.  On March 12, 2024, the California Supreme Court transferred this case back to this court with directions to vacate our decision and reconsider it in light of *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*).  After soliciting supplemental briefing from the parties, we stick with our prior ruling—namely, to affirm the convictions (which are unaffected by *Salazar*) and to remand the matter for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

Defendant and Eddie Hernandez are members of the Florencia 13 street gang.  Just after midnight on November 7, 2019, Hernandez drove them both into the territory controlled by the 38th Street gang, one of Florencia 13's rivals.  Defendant brought his .22-Ruger semiautomatic handgun, which was loaded

with bullets stamped with the letter "F" for Florencia. They saw Jorge Rios, who was walking down the sidewalk with his bicycle. After passing Rios, Hernandez pulled to the side of the road and turned off his truck's headlights. Defendant got out of the passenger's side and confronted Rios. Moments later, defendant shot Rios once in the mouth. Rios turned to flee, and defendant shot Rios three more times in the back. Hernandez pulled the car around, defendant got in, and they drove away.

The entire incident was caught on video.

Later the same day, defendant was arrested while in possession of a .22-Ruger containing a bullet casing stamped with the letter "F" that had failed to properly eject after the gun was fired. The bullet casings recovered near Rios's body were consistent with those from the gun in defendant's possession.

In a postarrest interview, defendant admitted to the police that he shot Rios, but said that Rios lifted his shirt to reveal a gun tucked into the waistband of his pants. The video does not show this.

To an undercover jail informant, defendant admitted that he brought his .22-Ruger with him into the rival gang territory, that Rios "had" a gun under his shirt "but didn't get to use it," that he shot Rios in the mouth and then emptied his clip into Rios's back, and that he would tell the police that he knew nothing about the incident until they proved he was involved and would *then* tell them that he acted in self-defense because Rios was reaching for the gun in his waistband. There was no gun recovered at the scene; there was only a machete, which was still tied to the frame of Rios's bicycle.

3

## II.    Procedural Background

In the operative first amended information, the People charged defendant with (1) the murder of Rios (Pen. Code, § 187, subd. (a)),[1] and (2) being a felon in possession of a firearm (§ 29800, subd. (a)(1)).[2]  The People alleged that defendant committed both crimes "for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subds. (b)(1)(C) & (b)(1)(A).)  As to the murder count, the People also alleged that defendant "personally and intentionally discharged a firearm . . . caus[ing] great bodily injury . . . or death" (§ 12022.53, subd. (d)) and that a principal to the crime had done the same (*id.*, subds. (d) & (e)(1)).

At trial, defendant conceded that he shot Rios.  The trial court instructed the jury on the distinction between first and second degree murder, instructed on perfect and imperfect self-defense, and instructed that a defendant loses the right to claim self-defense if he is the "initial aggressor" unless he tries to stop the fighting.

The jury convicted defendant of first degree murder, found the gang and firearm enhancements true, and found him guilty of being a felon in possession.

The trial court sentenced defendant to prison for 50 years to life, comprised of a base sentence of 25 years to life for the first degree murder count plus a consecutive 25 years to life for the

_____

[1]    All statutory references are to the Penal Code unless otherwise indicated.

[2]    The People also charged Hernandez with murder, but he was tried on a theory that he aided and abetted defendant, and the jury acquitted him.

4

firearm enhancement. The court imposed a concurrent, upper term sentence of three years on the felon-in-possession count.

Defendant filed this timely appeal.

**DISCUSSION**

## I.    Instructional Issues

Defendant argues that the trial court made two instructional errors. We independently review such claims. (*People v. Mataele* (2022) 13 Cal.5th 372, 419.)

### A.    *Initial aggressor instruction*

After instructing the jury on perfect and imperfect self-defense, the trial court gave the following instruction based on CALCRIM No. 3471:

> "3471. Right to Self-Defense: Mutual Combat or Initial Aggressor
>
> A person who starts a fight has a right to self-defense only if:
> 1. He actually and in good faith tried to stop fighting; AND
> 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting.
>
> If a defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight."

Defendant argues that his first degree murder conviction must be vacated because the trial court erred in giving this instruction. Specifically, he argues that (1) there was no evidentiary basis for finding that *he* was the initial aggressor; and (2) the trial court left the words "mutual combat" in the title of the instruction, even though the court did not instruct on

5

"mutual combat" as a bar to the use of self-defense.[3] Neither argument has merit.

The court did not err in giving the initial aggressor instruction. A trial court has a duty to instruct only if substantial evidence supports the instruction at issue. (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.) In evaluating whether substantial evidence supports *a defense*, we ask whether the evidence presented at trial, when viewed in the light most favorable to the defense, is enough for a reasonable jury to find that the elements of the defense have been established. (*People v. Breverman* (1998) 19 Cal.4th 142, 159; *People v. Mentch* (2008) 45 Cal.4th 274, 290.) In evaluating whether substantial evidence supports *a limitation on a defense* (such as being the initial aggressor), we view the record in the light most favorable to the People, as we would any other issue on which the People would be seeking an instruction. (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1050, citing *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) Because the propriety of the "[i]nitial [a]ggressor" instruction turns on whether defendant "start[ed] a fight" (CALCRIM No. 3471 [so defining the term]), we must ask: Is there substantial evidence, when viewing the evidence in the light most favorable to the verdict, that defendant started a fight with Rios? There is. Defendant drove by Rios in a car, then the car stopped, defendant got out, and defendant walked right up to Rios with a .22-Ruger in hand. A jury could reasonably infer that

---

[3]    Defendant argued in his opening brief that the court had instructed on "mutual combat" but failed to define the term, but after the People pointed out that the court had *not* instructed on "mutual combat" and merely left the words "mutual combat" in the title of the instruction, defendant backed away from his initial argument.

6

this type of aggressive approach constitutes starting a fight, thereby warranting the initial aggressor instruction. Defendant resists this conclusion, asserting that it is "completely unknown what happened at the scene right before the shooting"; however, the video shows the entire interaction, and is sufficient to support a finding that defendant started the melee between himself and Rios.

The court also did not err in failing to delete the words "mutual combat" from the title of the instruction. It is undisputed that the court did not instruct on the *substance* of mutual combat as a limitation on self-defense; what we have is superfluous language in the title that is never explained. This is not reversible error in the absence of "affirmative evidence showing" that the jury somehow misused this language. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1370; *People v. Staten* (2000) 24 Cal.4th 434, 459, fn. 7 [failure to omit language from instruction title not prejudicial error].) There is no such evidence here. Although the prosecutor mentioned "mutual combat" in his closing argument, it was merely to argue that it *did not apply here*. Even if we were to assume that this argument somehow put the "mutual combat" limitation before the jury despite the absence of an instruction on it, the instruction is at most irrelevant—and hence not prejudicial. (*People v. Cross* (2008) 45 Cal.4th 58, 67 ["Giving an instruction that is correct as to the law but irrelevant or inapplicable is error[ but] is generally "'only a technical error which does not constitute ground for reversal'""].)

## B.     *Unity of act and intent*

The trial court instructed the jury with CALCRIM No. 252 as follows:

> "The crimes and other allegation charged in this case require proof of the union, or joint operation, of act and wrongful intent.
>
> "The following crime requires general criminal intent: felon in possession of a firearm, as charged in Count 2.  For you to find a person guilty of this crime, that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he intentionally does a prohibited act; however, it is not required that he intend to break the law.  The act required is explained in the instruction for that crime.
>
> "The following crime and allegations require a specific intent or mental state: murder, as charged in Count 1, and the gun and gang allegations.  For you to find a person guilty of this crime or to find the allegations true, that person must not only intentionally commit the prohibited act but must do so with a specific intent and mental state.  The act and the specific intent and mental state required are explained in the instruction for that crime or allegations."

Defendant argues that this instruction is defective because the court did not list "deliberation and premeditation"—the intent necessary to find him guilty of first degree murder—as a "specific intent" in this instruction.  This argument is without merit.  This instruction lists which "crimes" and "allegations" require "general criminal intent" and which require "specific intent or mental state."  The instruction properly lists "murder"

8

among the crimes requiring "specific intent or mental state." The instruction's failure to list the various types of specific intent that define murder (express malice and implied malice) or that distinguish first degree murder from second degree murder (such as premeditation and deliberation) is in no way misleading in light of CALCRIM No. 252's explicit entreaty that "[t]he act and the specific intent and mental state required *are explained in the instruction for the crime or allegations*." (Italics added.) (Cf. *People v. Hill* (1967) 67 Cal.2d 105, 117-119 [trial court errs when it gives a general intent instruction when the only charged crimes are specific intent].)

## II.    Bifurcation

The trial court tried the murder charge and the gang enhancement allegation (§ 186.22, subd. (b)) in the same proceeding. Although the court had the discretion to bifurcate trial on the gang enhancement, defendant never asked the court to exercise that discretion. Defendant now claims that the trial court's failure to bifurcate on its own is reversible error under the newly enacted section 1109, which *requires* trial courts to bifurcate gang enhancements charged under § 186.22, subdivision (b), "[i]f requested by the defense." (§ 1109, subd. (a), added by Stats. 2021, ch. 699, § 5). The People respond that defendant has forfeited the right to claim nonbifurcation as error by not requesting it when he could have; that section 1109 is not retroactive; and that the failure to bifurcate was harmless because nearly all of the evidence underlying the gang allegation was also admissible to prove his motive—and hence his intent—for the murder charge.

We need not decide whether there was a forfeiture, and we need not join the fray regarding the retroactivity of section 1109

9

because we conclude the trial court's failure to bifurcate was harmless beyond a reasonable doubt.  We recognize that *People v. Burgos* (2022) 77 Cal.App.5th 550, 568, held that the failure to bifurcate "likely constitutes 'structural error'" that is *per se* reversible because bifurcation ""affect[s] the framework within which the trial proceeds,"'" but we disagree with *Burgos* on this point:  Every other court to consider the matter has found that the failure to bifurcate a gang allegation can be harmless error, at least where—as here—the question is whether the admission of the gang-related evidence would have come in anyway to prove issues relevant to the underlying charges.  (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1131-1133 [so holding]; *People v. Montano* (2022) 80 Cal.App.5th 82, 108-109 [same].)  Given the constitutional mandate only to reverse where there is a "miscarriage of justice" (Cal. Const., art. VI, § 13), and given that we are tasked here with examining the impact of the allegedly erroneous admission of evidence on a trial (which is the archetypical trial error (and hence not a structural error)), we join the emerging majority rule.

The failure to bifurcate the gang allegation in this case was harmless (either under *Chapman v. California* (1967) 386 U.S. 18, 24 or *People v. Watson* (1956) 46 Cal.2d 818, 836-837) because evidence of defendant's membership in Florencia 13, its rivalry with the 38th Street gang, the significance of the locale of the shooting, and the fact that defendant used bullets stamped with his gang's initial, all would have been admitted at his trial on the murder charge because the evidence was relevant to show his motive for gunning down Rios in his rival gang's territory, which tends to prove defendant's intent to kill, defendant's deliberation and premeditation, and his potential need for self-defense.

10

(Accord, *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049-1050 [bifurcation unnecessary where "the evidence supporting the gang enhancement would be admissible at a trial of guilt"].) What is more, because defendant freely admitted that he was the shooter, there was no danger that the jury identified him as the shooter merely because of his gang membership. Indeed, the trial court specifically instructed the jury that the "evidence of gang activity" was admissible "only for the limited purposes" of deciding defendant's intent supporting the gang enhancement, his motive, and his subjective belief in the need for self-defense, and *not* admissible "for any other purpose." To be sure, some portions of the People's gang evidence would not have come in during defendant's murder trial, such as the fact that other gang members committed predicate crimes. But that evidence was far less significant and so far removed from the main issues at trial—whether defendant acted in self-defense and whether he acted with premeditation and deliberation—that we are convinced that its admission was harmless beyond a reasonable doubt.

## III. Cumulative Error

Defendant argues that the instructional errors he asserts as well as the failure to bifurcate cumulatively undermine his murder conviction. Because we conclude that the trial court committed no prejudicial error, there is no error to cumulate. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1064.)

## IV. Sentencing Issues

### A. *Firearm enhancement*

At sentencing, defendant asked the trial court to exercise its discretion to strike the 25-year-to-life firearm enhancement entirely, or to impose either of the lesser 20-year or 10-year

enhancements available under the statute.  At that time, the Courts of Appeal were split over whether the trial court's discretion to strike this enhancement permitted it to impose a lesser enhancement.  In *People v. Tirado* (2022) 12 Cal.5th 688, our Supreme Court clarified that trial courts *do* have the discretion to impose either of the lesser firearm enhancements. (*Id.* at p. 692.)  Defendant urges that the trial court's denial of his request to strike the enhancement may have been based on the view that it lacked the power to impose a lesser enhancement, and that a remand is warranted to permit the court to exercise the full range of its discretion.

Although a remand is appropriate for a trial court to exercise its sentencing discretion when it is clear that the court during a prior sentencing did not appreciate the full extent of its discretion (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391), remand is not warranted if the trial court's statements at the prior sentencing "clearly indicate" that it would not exercise its discretion any differently on remand (*Salazar, supra*, 15 Cal.5th at pp. 419, 424, 425).  That is the case here.  In denying defendant's request to strike the firearm enhancement, the trial court remarked that defendant's conduct in "rid[ing] up on [Rios]" was a "cold-blooded" "execut[ion of] an innocent person"; that defendant committed this "execution" as part of a mission for his gang; and that he is a "grown man" in his 30s who "wears" his gang membership "proudly."  In the court's view, this rendered defendant "a danger to all humanity."  The court concluded that it did "not find that it would be in the interest of justice in any way, shape, or form . . . to exercise its discretion to strike" the firearm enhancement.  In *Salazar*, our Supreme Court reaffirmed its prior decision in *People v. Flores* (2020) 9 Cal.5th 371, 432,

12

where the court found a remand unnecessary where the trial court had indicated that the defendant "'"f[e]ll into the category of the worst of the worst offenders,'"'" "'"show[ed] absolutely no remorse,'"'" and acted "'"as if he ha[d] no soul."'"  (*Salazar*, *supra*, 15 Cal.5th at p. 431.)  The trial court's language in this case is equally committed to imposing the longest sentence possible, and hence a clear indication that the trial court would not exercise its recently conferred broader discretion any differently.  That being said, because, as noted below, we must remand for a resentencing in any event, the trial court remains free to reconsider this sentencing choice as well under the broader discretion conferred by Senate Bill No. 567.

> **B.** *Challenge to restitution fine, assessments, and direct restitution*

At sentencing, the trial court imposed direct restitution in a stipulated amount of $5,162.61; a $5,000 restitution fine; a $40 court security fee;[4] and a $60 criminal conviction assessment. Although *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) had been on the books for nearly two years, defendant did not invoke *Dueñas* to ask the trial court to determine whether he had the ability to pay any of these financial obligations.  Defendant now contends this was error.

---

[4]     Section 1465.8 requires a $40 court operations assessment to be imposed on *every* criminal conviction.  (§ 1465.8, subd. (a).) Defendant was convicted on two counts; therefore, the correct assessment is $80, not $40.  We may correct a trial court's failure to impose a mandatory fee on appeal.  (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530.)  We order the clerk of the superior court to prepare an amended abstract of judgment that reflects a total of $80 in court security fees.  (*People v. Chan* (2005) 128 Cal.App.4th 408, 425-426.)

We reject defendant's contention for two reasons. First, defendant forfeited the issue by failing to raise it. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1249.) Second, we have held that *Dueñas* was wrongly decided. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 322, review granted Nov. 26, 2019, S258946.) The propriety of *Dueñas* is currently before our Supreme Court. Third, a remand for a hearing on ability to pay would be futile. *Dueñas* does not apply to direct restitution awards (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169 [distinguishing restitution fines from direct restitution and clarifying that direct restitution was "not at issue"]; *People v. Allen* (2019) 41 Cal.App.5th 312, 326), so the full amount defendant must pay is $5,140. A defendant's ability to pay includes "the defendant's ability to obtain prison wages and to earn money after his release from custody." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376-1377.)

Prisoners earn wages of at least $12 per month. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a); Cal. Dept. of Corrections, Operations Manual, §§ 51120.6, 51121.10 (Jan. 1, 2020).) At even this minimum rate, defendant will have enough to pay the $5,140 he owes after 429 months (that is, 35 years and 9 months), which is long before his 50-year sentence would end. Even if defendant does not voluntarily use his wages to pay the amounts due, the state may garnish between 20 and 50 percent of those wages to pay the restitution fine. (§ 2085.5, subds. (a) & (c); *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1093.) Because defendant "points to no evidence in the record supporting his inability to pay" (*People v. Gamache* (2010) 48 Cal.4th 347, 409), and hence no evidence that he would suffer any consequence for nonpayment, a remand on this issue would serve no purpose.

**C.** *Sentence for being a felon in possession*

The trial court imposed a high-term sentence of three years for the felon-in-possession count. Although this was appropriate at the time, our Legislature has since enacted Senate Bill No. 567, which requires imposition of the middle-term sentence unless the trial court cites circumstances in aggravation (other than certified records of the defendant's prior convictions) that are found by a jury or admitted by the defendant. (§ 1170, subd. (b)(3).) Because this ameliorative law applies to nonfinal sentences, and because the trial court (understandably) did not articulate any circumstances in aggravation, the trial court's high-term sentence must be vacated so that defendant may be resentenced in accordance with Senate Bill No. 567's terms. (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.)

**D.** *Gang enhancement and gang-related firearm enhancement*

The firearm enhancement the trial court imposed was based on defendant's *personal* discharge of a firearm. Although the jury *also* found true the gang enhancement as well as the gang-related firearm enhancement based on a principal's discharge of a firearm, the trial court did not factor the latter two enhancements into defendant's sentence, and instead dismissed them without prejudice. In supplemental briefing, defendant argues that this was error and that in light of statutory changes to the gang enhancement, the trial court was obligated to dismiss those enhancements *with* prejudice. Specifically, defendant argues that a recent decision by our Supreme Court, *People v. Renteria* (2022) 13 Cal.5th 951 (*Renteria*) more specifically defined how to apply the gang enhancement when the defendant

15

is a "lone actor"; that defendant was a "lone actor" in this case; that the evidence adduced at trial does not constitute substantial evidence of the elements of the gang enhancement under *Renteria*'s "lone actor" standard; and that the People are accordingly barred from retrying defendant on these enhancements, thereby necessitating that they be dismissed without prejudice.

We are not persuaded.

To begin, this is *not* a "lone actor" case. *Renteria* involved a gang member defendant who fired off two gunshots at two houses in a neighborhood. (*Renteria*, *supra*, 13 Cal.5th 951, 957-958.) No other gang members were involved at all. Thus, he was a "lone actor." Defendant was not a lone actor. Instead, he had a cohort who was also a gang member. That cohort drove him into rival gang territory, pulled the car over, waited for defendant, and then drove off after defendant emptied his gun into Rios. Defendant resists this conclusion, arguing that Hernandez's acquittal somehow means defendant was a lone actor. But Hernandez's acquittal of *murder* does not mean that the undisputed evidence of Hernandez's gang membership or his conduct in this case somehow ceases to exist. Defendant responds that Hernandez's acquittal *necessarily* relies on the jury's rejection of his gang membership or what he did. Given that the jury's verdict was a general verdict, we cannot draw the inference defendant urges as the acquittal could—and most likely did—rest on Hernandez's lack of murderous intent. (*United States v. Watts* (1997) 519 U.S. 148, 155 [unless specific findings are made, "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty"]; *In re Coley* (2012) 55 Cal.4th 524, 554 [acquittal "does *not* constitute a

16

finding that the defendant is factually innocent of the offense or establish that any or all of the specific elements of the offense are not true"], original italics.)

And even if we were to ignore all of these facts and treat this case as a "lone actor" fact pattern, there is still more than substantial evidence that defendant acted with the intent to benefit his gang and engaged in conduct that benefited his gang. Defendant urges that there is no evidence he "intended his actions to be attributed to his gang" or "identified himself or his gang during the shooting or took credit for it on behalf of his gang afterwards." But the record is to the contrary. Defendant drove into his rival gang's territory, accosted someone walking along the street in view of anyone who happened to walk by, and without provocation shot him dead using bullets stamped with his gang's initial. From this conduct, a jury could reasonably infer that defendant was on a "gang" mission to intimidate his rival gang by entering its territory and committing an act of violence as a warning, leaving the gang-initial-stamped bullets as a calling card. This is not like *Renteria*, where the defendant—who happened to be a gang member—shot at two random houses.

17

**DISPOSITION**

The judgment of conviction is affirmed.  The matter is remanded for a new sentencing hearing to allow the superior court the opportunity to resentence in accordance with Senate Bill No. 567.  Following resentencing, the superior court is directed to prepare and transmit an abstract of judgment to the Department of Corrections and Rehabilitation, which shall include $80 in court security fees (rather than $40).

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

18